Jack Ferm
1812 W. Sunset Blvd
Suite 1-134
St. George, Utah 84880
(435) 674-9222
Plaintiff in Pro Se

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JACK FERM an Individual<br><br>                 Plaintiff,<br>VS.<br><br>Crown Equity Holdings Inc., a Nevada Public Corporation Trading on the Bulletin Board as (OTC: CRWE.OB), and MIKE ZAMAN, an individual, and MONTSE ZAMAN an individual  (husband and wife) Claudia McDowell, an individual, Lisa Odom, an individual, The Law firm of McDowell and Odom, a California firm, And including the following Yahoo ID Doe One dimitri_rostonov3, Doe Two karl_chamizer  And Doe Three danny_preston45, Plus Doe defendants 4 through 10 Inclusive,<br><br>                 Defendants. | CASE NO. 2:10-cv-02075-GMN-LRL<br><br>First Amended Complaint for:<br>1. Wrongful Termination Of Quasi Contract, by Bad Faith Breach in Retaliation for exercising a basic right<br>2. FRAUD by Misrepresentation<br>3. Private right of Action for Unlawful Manipulation of Securities under (9 (e) in Violation of Section 9(a)(2) & (4) and 10 (b) of the Securities Laws<br>4. Defamation Per Se<br>5. Breach of oral contract promising the future value of CRWE Securities and seeking Benefit of the bargain damages of $0.25 per share and,<br>6 Whistle Blower complaint Pump and Dump Scheme, with a new variation<br>7 Breach of Contract, failure of consideration<br>8. Fraud by Concealment<br><br>Jury Demand |

## Jurisdiction and Venue

1. Federal Jurisdiction is claimed under the US diversity Statutes 28 USC 1332, and the amount in controversy exceeds $100,000 exclusive of costs and interests; and Venue is proper under 28 USC 1391. As all of the Major Defendants are citizens of the US and State of Nevada and reside in Las Vegas, Nevada, County of Clark. Nevada, and Clark County is also the district where a substantial part of the events giving rise to the claim occurred

2. That three of the Defendants reside in California, Claudia McDowell, Lisa Odom, and the Law firm of McDowell Odom, these defendants are citizens of the State of California County of Los Angeles

3. Plaintiff is a Citizen and resident of the US and of the County of Washington, State of Utah.

4. The following defendants are listed as Doe defendants they are Yahoo ID (Doe One) dimitri_rostonov3, (Doe Two) karl_chamizer And (Doe Three) danny_preston45, they are believed to be employees of Mike Zaman, and have been

attempting to and have defamed Plaintiff by Libel on the CRWE message board, Plaintiff will subpoena Yahoo to determine their true identity after this lawsuit is commenced and include them with their proper name at that time.

5. The remainder of the Doe Defendants are believed to be further employees of Mike Zaman whom he has induced to help him smear Plaintiff's name on the CRWE message board, and or, associates that have been helping Zaman manipulate the shares of CRWE, in an attempt to either control the price of the securities, or to create a pseudo market for the shares. Plaintiff is not currently informed of the true names or identities of these individuals, as they are discovered Plaintiff will amend the complaint to identify them further.

## Opening Statement

6. This is a case involving an individual who has no regard for the Laws of the US, Born In Iran Mike Zaman has been unlawfully manipulating US Securities since even prior to 1996, In 1998 he was found guilty and barred from all future SEC

activities, this bar was due to his stock manipulation of Conectisys Corporation. He now stands accused of current and ongoing stock manipulation but in addition thereto for contempt of a Standing Federal Court Order of September 29, 1998.

7. What is of equal concern Mike Zaman has violated IRS Laws in particular IRC 7212 (b) and may be liable for Criminal prosecution under IRC 7215 (b) as well as SEC Rule 9 (a) (2) (4) and 10 (b) each and all going back to 2004 and continuing to the current date of this filing. Until approximately 2009 he conducted the Public company business from his home in Las Vegas where he paid his employees in cash and stock and failed to deduct or pay IRS withholdings as required by employers for employees.

8. But further it has come to light and therefore Plaintiff alleges on information and belief that Mike Zaman has been manipulating the price and volume of Crown Equity Holdings shares for several years, with the intent to bring in investors

through a showing of a market for CRWE securities.

9. Plaintiff on or about November 3, 2010 had attempted to deposit shares of Crown Equity Holdings securities in his trading account, and they were rejected by the broker without comment. Currently NO broker dealer will accept CRWE shares for Trading, and they are without value.

10.     On September 29, 1998 the United States District Court for the Central District of California, Civil Action No. 96-4164 (MRP) (ANx) Litigation Rel. No. 15909 / found Mike Zaman guilty of Stock Manipulation in regards to Conectisys Corporation Securities.

11.     The Commission also on the foregoing date instituted and settled and administrative preceding against Mike Zaman... the Commission permanently barred Zaman from association with any broker, dealer, investment adviser, investment company or municipal securities dealer, in short all SEC Related activities. The word association has a broad

meaning and includes: Connection, relationship, involvement or alliance.

12.     Defendant Mike Zaman knowing of his court ordered bar over securities manipulation, and in violation of that Order, acquired control of Crown Equity Holdings inc., in or about 2006, at the time the company was operating under a different name, Zaman subsequently changed the name to Crown Equity Holdings.

13. Mike Zaman who is not an officer or director of Crown Equity Holdings (CRWE.OB) personally sells stock in Crown Equity Holdings, and is and has done so through a subscription agreement, under SEC exemption Regulation "D" section 506, but without providing any prospectus, or submitting the same to the State or paying any exemption fee, accordingly Plaintiff is informed and believes that no prospectus or subscription agreement has been authorized for the State of Nevada in the year 2009, or at any time, and plaintiff further believes CRWE has never filed an S1 or other registration statement for their securities, but that all shares of the company

have been sold in this fashion, or used to acquire labor or goods.

14. Mike Zaman conceals his holdings and control of Crown Equity Holdings by having all of his shares held for him in family member's names: thus giving him control and the ability to manage the company's affairs, and to further his stock Manipulation scheme.

15. To conceal his ownership interest he has approximately half a billion shares of the defendant Crown Equity Holdings stock held as follows; approximately 73,310,976 shares are held in the name of his wife Montse Zaman and approximately 396,714,690 shares are held in a company "Crown Marketing Corp". Controlled by his Wife Montse Zaman allegedly these shares are held for her family in Mexico, and another 7,872,003 shares are held by Montse Zaman's Brother, and Mike Zaman also has an undisclosed amount he has been acquiring by manipulating the market with money he received from the sale of another public shell company.

16. The shares of stock held by the Zaman's give them complete control of Crown Equity Holdings Inc. (hereinafter "CRWE") and the Zaman's operate CRWE as if it were their personal and private company. (i) There are NO Board of Directors meetings other than minutes prepared by the company counsel, and (ii) there are no shareholders, or directors meetings as required by law, (iii) the Zaman's make all decisions regarding and affecting the company, and (iv) the officers and Directors of the company are figure heads, controlled by Mike Zaman and Montse Zaman.

17. Mike Zaman has total and complete control and exercises the same over CRWE with the full assent of his wife Montse Zaman. He makes the day to day decisions, and approves hiring, directs staff, raises money, and will decide who is laid off or fired. He also requires his employees to work overtime without compensation. And key staff members are paid a general amount of $5,000 a month, of which a portion is paid in cash and the remainder in Stock. Generally it has been

$2,000.00 in cash and $3,000.00 in Stock, which value has been manipulated by Mike Zaman to appear that the stock had value.

18. CRWE shares are currently trading around a penny a share, and the market is being maneuvered lower each trading day, on information and belief Mike Zaman and some associate are manipulating the market lower and have already reduced the bid to $0.005, in addition there appears to be only one buyer for the securities and that is believed to be either Mike Zaman or a co-conspirator who is currently unknown, but is considered one of the Doe defendants.

19. Crown Equity Holdings is a sham company with officers and directors who have no business background or experience, their only talent is to be subordinate to Mike Zaman, for example Montse Zaman the treasurer/secretary/director of CRWE was a maid, before becoming Secretary/Treasurer/and a director of Crown Equity Holdings. The Chairman of the Board ARNULFO SAUCEDO is the brother of Montse

Zaman, he has NO business or management background, neither Montse Zaman nor ARNULFO SAUCEDO speak fluent English.

20. The Zamans' have misrepresented the Value of their securities in CRWE, selling those securities with a promise that they will be worth in excess of $0.25, and that Mike Zaman was taking the company to NASDAQ where it would be worth $3.00 to $5.00 a share. All the while Mike Zaman makes these representations he has been carefully manipulating the market to show some movement and price increases for CRWE's securities. In short Mike Zaman is the Market for these securities and determines their trading price.

21. The Zamans' have flooded the market with CRWE stock, most recently they authorized a 1 for 10 forward split increasing the shares outstanding by 10 and their control factor by the same number. But by doing so the Zamans' have substantially reduced the value of the stock itself even further, although it is believed it never had any real value.

22. Defendant Mike Zaman has given generous amounts of shares to individuals outside the country that have also flooded the market in some cases, on information and belief, trying to divest themselves of the shares. In other cases, such as an individual in Costa Rica, Mike Zaman, on information and belief, employed him to create a trading volume for CRWE shares. This belief is based on the fact that this individual was a known stock manipulator and criminal also convicted of the same stock manipulation Zaman himself was convicted of, yet Zaman gave him access to CRWE Stock, which Zaman claimed this individual was trading back and forth from multiple companies in what is know as "painting the tape" an illegal form of stock manipulation. On information and belief, the shares were to be turned over to Zaman after the trading was complete. This belief is based on Plaintiff's knowledge that Mike Zaman demanded this individual return those shares.

23. Mike Zaman in violation of Section 9 (a)(2) and (4) of the securities laws has been manipulating

the market value of the shares, attempting to show that there is a market and demand for CRWE shares, when in fact there was and is very little if any, currently there appears to be only one buyer for these securities and that single buyer is setting the price.

24. Mike Zaman and perhaps another of his associates have been acquiring shares of CRWE stock to maintain a trading volume, and establish the market price, a violation of SEC Rule 9 (a) (2) and (4)

25. Mike Zaman acts in the Capacity of Montse Zaman, as her agent and representative and as the disclosed Principle Montse Zaman is also liable for damages shown, and such damages as will be established at trial.

26. Mike Zaman also acts in the Capacity of Crown Equity Holdings as its agent and representative and as the disclosed Principle Crown Equity Holdings is also liable for damages shown, and such damages as will be established at trial.

27. Claudia McDowell, and Lisa Odom and their law firm McDowell Odom on information and belief

are aware of the Fraud by Zaman's acts in the Control of CRWE, his stock being held by family, and his manipulation of CRWE shares, and has aided and abetted him in his activities. This belief is based on the following facts (i) Claudia McDowell was married to Mike Zaman in 1998, and was there when he was tried and found guilty of Stock manipulation, she was and remains fully cognizant of the standing order of 1998, and (ii) Lisa Odom is the daughter of Mike Zaman she was 19 during the 1998 trial and on information and belief was fully aware of the circumstances.

## FACTS, AND GENERAL ALLEGATIONS RELEVANT TO ALL COUNTS

28. In or about February 2009 Plaintiff was in Las Vegas at his office on Jones and was approached by mike Zaman to invest in his Company Crown Equity Holdings, Plaintiff was induced by Mike Zaman to invest a substantial amount of money to acquire shares in Crown Equity Holdings Inc, ("CRWE") the representations were that Plaintiff would make a large return of more than double his investment,

and that the shares he was acquiring for $0.10 would be worth $0.25 by the end of 2010, the second part of this representation was that if Plaintiff did invest this money Crown Equity Holdings would fund Plaintiff's company the following, e.g. for the first for months, CRWE would fund $500,000 a month and on the 5th month CRWE would fund $50,000,000. The purpose of this funding was to acquire properties out of foreclosure to keep the homeowner in the property.

29. The real fact; neither CRWE nor Mike Zaman had any means to provide the funding as was represented, and the shares may not even be trading by December 31, 2010, the current bid as of November 24, 2010 is $0.01 and falling, the real purpose of this representation and agreement was so that CRWE could put out a press release which was intended to create a market for CRWE shares, and stimulate trading in the securities.

30. In or about May of 2009 Plaintiff was induced by Mike Zaman to invest an additional amount of

money to acquire additional shares of CRWE by virtue of the same representations. Plaintiff did also invest at that time; he has now learned this was a method for Zaman to create a market for CRWE shares, by inducing investors to buy stock in the company.

31. In or about December 2009 Plaintiff was once again induced by Mike Zaman to trade his office furnishings, which were in storage, for stock in CRWE, Plaintiff was provided approximately 40,000 shares in CRWE Stock in exchange for $100,000 in office fixtures, and assured that he would make more than $100,000 from these shares, as the stock was going to increase in value, and would be on NASDAQ and worth $3 to $4 dollars each. What Plaintiff did not know at the time, was that the Price of the stock may even then have been artificially manipulated by Mike Zaman, The consideration for the sale has now failed, and plaintiff is entitled to cash or other consideration in exchange for the CRWE stock which is worthless as a consideration.

32. In or about January of 2010 Plaintiff was hired by Defendant Mike Zaman to manage and over see the company "News" Department, he was hired as an employee, and as one of four supervisors, he was supervised by the Company CEO, and by Mike Zaman personally, Plaintiff was told what work to do and when to do it, Plaintiff had one subordinate employee that he directed, this employee was provided by the company, and plaintiff was required to work at the CRWE offices on Sahara Avenue, Plaintiff, prepared scripts for Video presentations, edited articles from Pakistan, and created content for CRWE Clients. Each item he completed was directed by the company and was always subject to company approval. For all this Plaintiff was paid at the rate of $5,000 a month, at that time Plaintiff was paid $2,000 in cash and $3,000 a month in Stock, as restricted shares, which is worth substantially less than at the time it was provided.

33. When Plaintiff first went to work for Mike Zaman and CRWE he noted that Zaman required every

employee to work 7 days a week and 10 hours a day, Zaman was not paying overtime. Zaman tried to infer that every employee was an independent contractor.

34. Plaintiff seeing, for one a potential burn out, spoke to the CEO, and had the above changed to give the employees at least one day off, and also that the company had to pay over time, and they also had to withhold for the IRS, which at the time they were not doing.

35. Zaman checked with his Legal Department and they said the same, with the exception that any employee that had a pre existing corporation or other business entity could be paid as an independent contractor, with that in mind Zaman paid FERM through one of his companies as an independent contractor to avoid IRS withholdings. There were and are some 6 employees Zaman paid accordingly. However, FERM and the others were not independent contractors but were actually employees.

36. Under common-law rules, anyone who performs services for an employer is an employee *if the employer can control what will be done*

***and how it will be done.*** This is so even when you give the employee freedom of action. What matters is that the employer has the right to control the details of how the services are performed. CRWE and Mike Zaman controlled the services and when and how they were performed.

37. Additionally Plaintiff was one of (4) company supervisors and handled employee grievances as a company Human Resource department. Where employees unhappy with something to do with the company or how they were treated could come and complain, Plaintiff would make a recommendation to the CEO or Mike Zaman on how to resolve the issue. Plaintiff also underwent, along with the other employees, required Sexual harassment training, and signed the employee hand book, agreeing to abide by its covenants and conditions, so there is no issue about Plaintiff's status with the company. Plaintiff was an Employee.

38. **Plaintiff has invested in CRWE stock by virtue of acquiring that stock for cash and value and services rendered to the company.**

39. **In or about November of 2010, Plaintiff learned that Mike Zaman was causing a market manipulation of CRWE securities through a series of transactions in order to create actual or apparent active trading in the CRWE Stock. Zaman was acquiring stock with the intent of raising or depressing the price of the CRWE**

security for the purpose of inducing the purchase or sale of such security by others.

40. In or about November 2010Plaintiff attempted to sell his shares of CRWE Stock, Mike Zaman, harassed Plaintiff over his attempted sales, calling plaintiff continually attempting to coerce him to stop selling the shares. Plaintiff later learned this was because Zaman was the only buyer…and was monitoring who was selling CRWE stock

41. Mike Zaman during this time was constantly contacting other sellers and attempting to get them also to stop selling their shares, as he later admitted to Plaintiff, Zaman was the buyer holding up the stocks value and creating a market.

42. It was during November 2010 that Mike Zaman advised Plaintiff that he was the one keeping the stock value up. By acquiring the CRWE shares when there was NO market for them, and at a price that would maintain their market value. And that he was the one who had bought Plaintiff's shares.

43. Mike Zaman admitted to Plaintiff at the time that he had invested over $60,000 to maintain the impression that there were buyers for the shares of CRWE. That amount is now believed to be more than $100,000, but Plaintiff further believes that this has been ongoing and the actual amount Zaman has invested in creating a market for these securities may be closer to $200,000, which is part of the proceeds Mike Zaman received from the sale of the prior Public shell Company

44. Mike Zaman advised Plaintiff that if he continued to sell his shares he, Mike Zaman would trash the market driving the shares down to below $0.01 each.

45. On or about November 24, 2010 based on information and belief, Plaintiff alleges that Zaman manipulated the price of the Stock downward to a bid of $0.01 per share.

46. Plaintiff is holding shares which have seen their value decrease substantially through Mike Zaman's market Manipulation.

47. The shares were represented to Plaintiff that after the forward split, they would have a value of $0.25 each, that misrepresentation was a known misrepresentation. These shares have a current bid of $0.01 and the bid is falling daily.

48. On or about November 23, 2010 Plaintiff was able to sell some of his shares at a price of around $0.025 to $0.0273, Mike Zaman became irate, and badgered and harassed plaintiff through multiple Skype phone calls, to stop selling his stock, Plaintiff continued to Sell, and on information and belief, Mike Zaman was the buyer and that would account for his anger, also by the end of the trading session, Mike Zaman called Plaintiff and knew exactly how much CRWE stock he had sold.

49. On or about November 23 at approximately 4PM Mountain time Mike Zaman called Plaintiff over Skype and fired him for selling his stock against Mike Zaman's orders.

50. That the firing was a wrongful termination and was in retaliation for Plaintiff doing what he had a

lawful right to do sell stock he had acquired with

his own money

### First Cause of Action
### Wrongful Termination,
### Bad Faith Breach of a Quasi Contract:
### In Retaliation for exercising a basic right
### Mike Zaman, Montse Zaman,
### Crown Equity Holdings

51. Plaintiff repeats, re-alleges and incorporates all prior paragraphs as though the same are fully set forth hereat.

52. Plaintiff was employed at Crown Equity Holdings inc, CRWE.OB at their offices on Sarah avenue in Las Vegas, Nevada from approximately April of 2010 to November 23 of 2010

53. At the time of the employment there was created between Crown Equity Holdings and Plaintiff, a Quasi Contract relationship; the terms of the hiring were employing Plaintiff in good faith, and a promise to deal with Plaintiff fairly and justly, that quasi contract relationship also contains a covenant of good faith and fair dealing based on the employment relationship.

54. A second part of that quasi contract relationship was a promise to reimburse plaintiff for his gas

and upkeep for his car as the company required Plaintiff to work at the offices in Las Vegas, and Knew that Plaintiff Lived in St. George, Plaintiff has paid $65.00 a week for gas to travel back and forth, and has gone through a set of tires which costs over $400.00, Plaintiff is entitled to be reimbursed $2,080 in Gas plus $400.00 for tires, or mileage based on the IRS allowance

55. The Company also created an employee hand book which spelled out reasons for which an employee may be reprimanded or terminated; Plaintiff was never in violation of any article, section or provision of the handbook, and was never reprimanded by any superior company official for any type of act or ommission.

56. This Quasi Contract relationship has been interpreted by the State of Nevada to mean; that employer personnel decisions are subject to a "just-cause" standard and that terminations made in bad faith or motivated by malice are prohibited.

57. The motivation to terminate plaintiff was in both bad faith and was undertaken with malice, and was due to plaintiff selling shares of CRWE stock

while Mike Zaman was manipulating the market for these securities.

58. Plaintiff was not aware that Mike Zaman was manipulating the market for the CRWE securities

59. Plaintiff worked a 70 to 80 hour work week; there were no reprimands or complaints about the work Plaintiff performed. He was paid as follows $2,000 by check and $3,000 in stock at the value of the stock the day it was issued. However Plaintiff was unaware at the time that Mike Zaman was manipulating the stock value in order to pay Plaintiff in less stock then he was otherwise entitled or had agreed to accept.

60. Plaintiff was hired by Mike Zaman

61. Plaintiff was required to drive to Las Vegas from his home in Utah for 4 days a week and worked from his home for an additional (3) days. Plaintiff worked an average week of 70 to 80 hours

62. The Company had an Employee hand book, which Plaintiff helped to prepare; he was not in violation of any article of the hand book or company policy, or procedures.

63. The quasi contract relationship provided that CRWE could only fire plaintiff through the exercise of Good faith, and fair dealing. Plaintiff was fired without consideration of any fair dealing, Plaintiff was fired unjustly, and unreasonably, and in bad faith, in retaliation for selling his shares of CRWE stock which Plaintiff had purchased before coming to work for the company, and had every right to sell, there were No restrictions on Plaintiff selling those shares, and no company policy against selling company shares, what was really going on, was Mike Zaman attempting to control the market for the CRWE Securities.

64. The requirement of Good faith and fair dealing has been interpreted to mean (i) with Just cause; Just cause has been interpreted to mean; In the workplace, it creates a burden of proof or standard that an employer must meet to justify discipline or discharge. Just cause usually refers to a violation of a company policy or rule. In some cases, an employee may commit an act that is not specifically addressed within the employers

policies but one of which the employer believes warrants discipline or discharge. In such instances, the employer must be confident that he can defend his decision.

65.   The Just Cause standard has seven tests; they are as follows: (i) Was the employee forewarned of the consequences of his or her actions, (ii) Are the employer's rules reasonably related to business efficiency and performance the employer might reasonably expect from the employee, (iii) Was an effort made before discharge to determine whether the employee was guilty as charged, (iv) Was the investigation conducted fairly and objectively, (v) Did the employer obtain substantial evidence of the employee's guilt, (vi) Were the rules applied fairly and without discrimination, (vii) Was the degree of discipline reasonably related to the seriousness of the employee's offense and the employee's past record.

66. There is an additional standard that is applied in Nevada: that terminations made in bad faith or motivated by malice are prohibited, Plaintiff's Termination was motivated by both bad faith and malice.

67. Plaintiff was terminated for Non employment related reasons, he was terminated because he was selling his own CRWE stock that he had purchased even before working for the company. Securities for which he had a right to sell. And

without interference from the Company, or indeed Mike Zaman in particular.

68. Plaintiff was fired by Mike Zaman, who had no right to fire plaintiff, and he was fired in retaliation for selling his shares, a bad faith breach of the Quasi Contract relationship. In addition Mike Zaman is not an officer of the company, nor is he any director; his claim to control is that his wife controls half a billion shares of CRWE stock. However everyone knows it is for Mike Zaman, as Montse Zaman has No real training, or education, before the marriage she was a house maid, now with that background she has control of a public company!

69. Defendants conduct was Intentional and done with Malice, and Fraud, and Plaintiff is therefore entitled to exemplary damages of three times his actual damages, which shall be subject to proof at the time of trial.

70. Plaintiff is also suffering from deep and severe emotional distress and anxiety due to the loss of income, and mounting bills, Plaintiff seeks

damages for this intentional condition the defendants have caused him to suffer.

71. In addition Plaintiff has actual losses in money all of which shall be subject to proof at the time of trial but for example Plaintiff seeks wage compensation for up to 120 months at $5,000 a month. Plaintiff is 70 years old and the likelihood of finding employment is unlikely. Plaintiff requires payment in cash at the fair trade value, for all the worthless stock he now holds.

72. Fair Trade Value means (i) $100,000 in cash for the furniture, and for the remaining shares based on the representations of their future worth, $0.25; these shares were paid as a part of Plaintiff's wages.

Second Cause of Action
Fraud by Misrepresentation
Mike Zaman, Montse Zaman,
Crown Equity Holdings

73. Plaintiff repeats, re-alleges and incorporates all prior paragraphs as though the same are fully set forth hereat

74. On or about January 2009, at Las Vegas Nevada and at the Offices of Plaintiff, Mike Zaman represented that he was the control

person of CRWE, at that time Zaman made a material representation, that if Plaintiff invested money in his company CRWE he would finance Plaintiffs acquisition of Real Properties in order to be able to keep people facing foreclosure in their homes.

75. Mike Zaman further represented that he would fund $500,000 a month for the first 4 months and then raise $50,000,000 during that time for that purpose of helping Plaintiff keep Nevada homeowners facing foreclosure from being evicted.

76. Zaman made the statements to induce Plaintiff to act.

77. Plaintiff relied on the representations, and his reliance was justified, as Zamon appeared to actually control Crown Equity Holdings.

78. Zamon represented himself, his wife Montse Zaman and Crown equity Holdings at the time the statements were made, as he was the agent and representative of each.

79. The statements were when and as made knowingly false and the defendants and each of

them either knew or should have known them to be false, they were made only to induce Plaintiff to act and to pay over a large sum of money. As Plaintiff later learned that Zaman had no ability to raise the funding he had promised, Mike Zaman was desperate to get his hands on Plaintiff's money, as plaintiff later learned, at the time Mike Zaman was broke and the company was about to fold

80. Plaintiff did pay the funds as requested, and has been damaged thereby, as Plaintiff later learned, neither Mike Zaman, or Montse Zaman or CRWE were able to provide the funding they claimed they could.

81. In addition from approximately April of 2010 to November 23, 2010 Zaman hired Plaintiff to work at the corporate offices and paid him primarily in stock, of approximately $3,000 a month, Zaman represented that the stock would be worth $0.25 by the end of the year, however he either knew or should have know that they would never be worth that amount as he then made a 1 for 10 forward

stock split causing the price of the stock to crash, and it is currently bid at $0.01

82. However, in addition, as Mike Zaman was manipulation the stock value and creating a false market for the securities he knew or should have known the Stock would never have a real value.

83. Again Plaintiff relied on the representations of Zaman, and those parties he represented, his reliance was still justified, and Plaintiff's was thereby damaged in the actual value of the stock verses the represented price.

84. In addition in or about January 2010 Plaintiff was induced by Zaman to sell his office furnishings for 40,000 shares of stock in CRWE, the representation was that Zaman was taking the company to NASDAQ and his stock would be worth $3.00 to $5.00 a share and Plaintiff would be able to sell the securities and re-capture his investment, however when Plaintiff attempted to sell some securities, Plaintiff learned that Zaman was manipulating the market, because when Plaintiff did sell some, Zaman fired him.

85. Each of the foregoing representations was when and as made false, and were known by defendants at the time to have been false.

86. Plaintiff relied on each and every representation of defendants and has been damaged in a loss of labor, and its monetary value and actual money as well as furnishings valued at $100,000.

87. Plaintiff is entitled to the Benefit of the Bargains in cash.

88. Defendants conduct was Intentional and done with Malice, and Fraud, and Plaintiff is therefore entitled to exemplary damages of three times Plaintiff's actual damages, subject to proof at the time of trial.

89. In addition Plaintiff has actual losses in money all of which shall be subject to proof at the time of trial.

Third Cause of Action
Private action for
Unlawful Manipulation of Securities under 9 (e)
In Violation of Section 9 (a) (2) & (4)
And authorization
for a private right of action under 10 (b)
And the 1933 act, Section12 (2)
Of the Securities Laws
All Defendants

90. Plaintiff repeats, re-alleges and incorporates all prior paragraphs as though the same are fully set forth hereat

91. Rule 10b-5: Employment of Manipulative and Deceptive Practices: Provides a private right of action for stock manipulation: Plaintiff alleges the following: (i) Mike Zaman was using deception through Stock manipulation to induce plaintiff and others to purchase the shares of CRWE stock, (ii) The representations of the value and future value of the securities were material to Plaintiff's decision to acquire the securities, (iii) the representations and deception were in connection with the sale of CRWE securities. (iv) Mike Zaman and each of the defendants either knew or should have known that their manipulation of CRWE securities was a fraud, as Mike Zaman was found guilty of stock manipulation previously, (v) plaintiff has standing to bring this action as he has invested a substantial amount of money, and labor, and furnishings in acquiring the shares of CRWE, (vi) Plaintiff relied on the defendants representations. (vii) plaintiff has lost most of his investment due to the fraud and deception of the defendants, (viii) that plaintiff's loss was due to the manipulation of CRWE shares by these Defendants and their deception in portraying their security as having a trading market, when in reality it had none, and (ix) Plaintiff has been damaged in the loss of his money, and in the loss of his labor, and furnishings.

92. Rule 10b-5 : states: It shall be unlawful for any person, directly or

indirectly, by the use of any means or instrumentality of interstate

commerce, or of the mails or of any facility of any national securities

exchange,

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a
material fact necessary in order to make the statements made, in the light
of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates
or would operate as a fraud or deceit upon any person, in connection with
the purchase or sale of any security."

93. Mike Zaman employed a scheme, or artifice to defraud

Plaintiff and others, he was using the private sale of securities to bring in

money for the company and for him self personally, through manipulating

the shares of CRWE securities to give the impression that there was a

trading market for these shares and that the price was advancing

94. There is a private right of action for a Violation

of SEC Rule 9 (a) (2) and (4)

95. Plaintiff was a victim of the defendants, while

Zaman was manipulating the market for the

shares of CRWE stock, his acts caused Plaintiff

to lose most of the stock value, Zaman was

maintaining a market while representing to

Plaintiff that there was indeed a market for these

shares, Plaintiff, unaware the stock was being

manipulated, only agreed to accept stock

because of the misrepresentations that the stock will be worth at lease $0.25, and that there was a market for these securities.

96. Claudia McDowell, Lisa Odom and McDowell Odom law firm, were aware that Mike Zaman was manipulating the shares and unlawfully in control of Crown Equity Holdings, in violation of a Federal Court order; and failed to take any action to protect investors, or the company, or to inform plaintiff, and they had a duty to disclose this information, as they were counsel to CRWE and owed a duty to CRWE and CRWE investors, instead they aided and abetted Zaman in his control of CRWE,

97. Mike Zaman on or about November 23 was attempting to hold the market for CRWE shares at $0.03, the market was falling and bids were around $0.0227, to $0.0226, Mike Zaman called plaintiff and asked if he was selling shares, when Plaintiff acknowledged that he was, Mike Zaman insisted that Plaintiff put the stock up for sale at $0.03, at first Plaintiff did, but when there were no

buyers at $0.03, Plaintiff reduced his price to the bid price and his stock began selling,

98. Plaintiff sold shares below $0.03 and at the end of the trading session Plaintiff had shares up at $0.0226 and the final sale of the day bypassed Plaintiffs shares and acquired a minimal number of shares at $0.03, illogical for a true investor who would buy at the best price available. After the trading session ended Mike Zaman called Plaintiff again and stated as a matter of fact "You sold $4500 in stock didn't you, you are driving the market down" when Plaintiff attempted to advise Mike Zaman that he was not driving the market down, he merely sold into the market at the bid price, Zaman hung up, angry.

99. Zaman later acknowledged to Plaintiff that he was maintaining the market and that by selling under $0.03 Plaintiff was driving the market down, and that he was trying to keep the stock at and above $0.03 because if it went to $0.02 it would drop to a penny.

100. On or about January 2009, at Las Vegas Nevada and at the Offices of Plaintiff, Mike

Zaman represented that he was the control person of CRWE, at that time Zaman made a material representation, that if Plaintiff invested a specified sum of money in his company CRWE he would finance Plaintiffs acquisition of Real Properties in order to be able to keep people facing foreclosure in their homes. Zaman made a statement to induce Plaintiff to act, that he would fund $500,000 a month for the first 4 months and then raise $50,000,000 during that time for that purpose.

101.    Plaintiff relied on the representations, paid over the money as required, and his reliance was justified, as Zamon appeared to actually control Crown Equity Holdings, and it was a publicly traded company.

102.    Zamon represented himself, his wife Montse Zaman and Crown equity Holdings at the time the statements were made, as he was the agent and representative of each.

103.    The statements were when and as made knowingly false and the defendants and each of

them knew them to be false, they were made
only to induce Plaintiff to act.

104.    Plaintiff did pay the funds, and has been
damaged thereby, the stock was never worth
$0.25 either before or after the 1 for 10 forward
split, as the stocks on information and belief were
being manipulated by Mike Zaman and some
associates from the very beginning, and as Mike
Zaman had funds available.

105.    In addition from approximately April of 2010
to November 23, 2010 Zaman hired Plaintiff to
work at the corporate offices and paid him in
stock, of approximately $3,000 a month, Zaman
represented that the stock would be worth $0.25
by the end of the year, however he either knew or
should have know that they would never be worth
that amount as he then made a 1 for 10 forward
stock split causing the price of the stock to crash,
and it is currently bid at $0.01

106.    In addition as Mike Zaman was manipulating
the price of the stock and creating a trading
volume by purchasing the stock, he either knew

or should have known at the time he made the representations that they were false.

107.    Again Plaintiff relied on the representations of Zaman, and those he represented, his reliance was still justified, and Plaintiff's was thereby damaged in the actual value of the stock verses the represented price.

108.    In addition in or about January 2010 Plaintiff was induced by Zaman to sell his office furnishings which were at the time in storage for 40,000 shares in CRWE stock, the representation was that Plaintiff would be able to sell the securities and re-capture his investment, however when Plaintiff attempted to sell the securities, Zaman was manipulating the market, and then when Plaintiff did sell some, Zaman fired him and dropped the market in retaliation.

109.    Each of the foregoing representations was false when and as made, and were known by defendants at the time to have been false.

110.    Plaintiff relied on each and every representation of defendants and has been damaged in a loss of labor, and its monetary

value, the loss of furnishings and their actual value, and actual money,

111.    Plaintiff is entitled to the Benefit of the Bargain.

112.    Plaintiff is also entitled to a rescission of all stock transactions, however since Zaman has damaged most of the furniture by having his employees move it to the Sahara address, dropping a piece of an expensive desk off a Pick up truck onto the freeway during a move and otherwise damaging all the expensive furniture, only a payment in cash will make plaintiff whole.

113.    Defendants conduct was Intentional and done with Malice, and Fraud, and Plaintiff is therefore entitled to exemplary damages subject to proof at the time of trial.

114.    In addition Plaintiff has actual losses in money all of which shall be subject to proof at the time of trial.

Fourth Cause of Action
Defamation Per Se By written Libel
Mike Zaman, Montse Zaman,
Crown Equity Holdings, and
Yahoo ID Doe One dimitri_rostonov3, Doe Two
karl_chamizer  And Doe Three danny_preston45,

115.   Plaintiff repeats, re-alleges and incorporates all prior paragraphs as though the same are fully set forth hereat

116.   On or about November 24, 2010 Mike Zaman was acting for himself and as an agent for Montse Zaman, and Crown Equity Holdings.

117.   On or about November 24, 2010 Mike Zaman from Las Vegas Nevada sent out an email, publishing by Libel, to third unprivileged parties, namely; Claudia McDowell, Lisa Odom, ken Bosket, Ron Gunderson, Mario Sanders, and Mario Barton stating as a fact That Plaintiff was a blackmailer. A Crime punishable as a felony.

118.   On November 27, Mike Zaman acting for himself, his wife Montse Zaman and Crown Holdings published a statement on the CRWE message board calling Plaintiff a "THIEF" an "Extortionist", and a "BLACKMAILER", Plaintiff is not a thief, extortionist or blackmailer. The statements were in written form

119.   On November 27 Yahoo ID Doe One dimitri_rostonov3, Doe Two karl_chamizer  And Doe Three danny_preston45, made comments on the CRWE message board that Plaintiff a "THIEF" an "Extortionist", and a "BLACKMAILER", Plaintiff is not a thief, extortionist or blackmailer. These statements were written.

120.    The Statements made by Mike Zaman and the named doe defendants were false and defamatory statements concerning Plaintiff; and were made with Malice in retaliation to the disclosures of this lawsuit and the complaint Ferm filed with The SEC.

121.    On or about November 27, 2010, Mike Zaman induced three of his employees to smear Plaintiffs reputation over the same message board, in order to take attention away from truthful comments about the Zaman's and CRWE, those employees are known at this time as Doe One dimitri_rostonov3, Doe Two karl_chamizer And Doe Three danny_preston45, Plaintiff will subpoena their names from Yahoo and then amend the complaint to identify them further.

122.    The Statements made by Mike Zaman, and the three doe defendants were an unprivileged publication of the statements to third parties

123.    The Statements were of Allegations that plaintiff has committed crimes of moral turpitude; which Plaintiff has not.

124.    In Defamation Per Se cases, damages are not necessary to prove, the fact the statements were made and published is enough for liability and a judgment.

125.    The email was published to third parties.

126.    The message board is viewed by third parties.

127.    The email and message board statements was disseminated to the

third parties in retaliation for Plaintiff bringing a lawsuit against Mike

Zaman, Montse Zaman and CRWE for Wrongful Termination and the SEC

complaint violations alleged therein.

128.    The libelous publications were made with malice, and in retaliation

of Plaintiff providing information about CRWE and Mike Zaman to the

SEC, and therefore Plaintiff is entitled to exemplary damages.

### Sixth Cause of Action
### Breach of oral contract/Promissory Fraud
### promising the future value of CRWE Securities and
### seeking Benefit of the bargain damages of $0.25
### per share, and $3.00 per share
### Mike Zaman, Montse Zaman, Crown Equity
### Holdings, Claudia McDowell, Lisa Odom, the
### McDowell Odom Law firm

129.    Plaintiff repeats, re-alleges and incorporates

all prior paragraphs as though the same are fully

set forth hereat

130.    During 2009 and the early part of 2010 Mike Zaman as an agent

for Montse Zaman and CRWE made material representations to Plaintiff

regarding the future value of CRWE Securities, based on those

representations Plaintiff acquired a substantial number of CRWE Shares.

131.    These representations were known by Mike Zaman to be false

when made, the representations warranted that the value of each share of

stock Plaintiff acquired would be worth $0.25 or more, however, Zaman

never intended for the shares to be worth $0.25 as he made a forward

split of 1 for 10 shares causing the value to decline substantially, and in addition Mike Zaman was manipulating the share value upward to create the impression that there was a demand or more precisely a market for the shares, plaintiff has learned that there was never a market for these Shares and if Mike Zaman was not creating a market the shares would have ceased to trade.

132.    Plaintiff also sold the defendants $100,000 worth of office fixtures for 40,000 shares of CRWE stock which was represented to have a future value of a minimum of $3.00 as the Company was going to be listed on NASDAQ

133.    Claudia McDowell, Lisa Odom and the McDowell Odom Law firm knew of the Order of September 29, 1998, in which Mike Zaman was barred from SEC related activity over stock manipulation. Claudia McDowell was at the time married to Mike Zaman and was there at the time and fully familiar with Court holding and Mike Zaman's subsequent involvement, and Lisa Odom is Mike Zaman's daughter she was 19 at the time of the 1998 order, and both along with their firm are the counsel for CRWE, they had a duty to disclose to plaintiff, but failed to warn Plaintiff,

134.    Plaintiff is entitled to the benefit of the bargain or $0.25 for each share he holds at the time of trial except the 40,000 shares he is entitled to $3.00 a share for those.

135.    Plaintiff, based on the Fraud of the defendants, is also entitled to exemplary damages.

## SEVENTH CAUSE OF ACTION
### WHISTLEBLOWER FOR
### A New Variation of the
### ILLEGAL PUMP AND DUMP SCHEME
### ALL DEFENDANTS

136. Plaintiff repeats, re-alleges and incorporates all prior paragraphs as though the same are fully set forth hereat

137. In or about 2008 Mike Zamon was firmly in control of CRWE, he created a variation on the old Pump and Dump scam…that variation was to promote public companies while pretending to be an IR, PR firm, to accomplish his goal he set this scam in motion by creating multiple websites to promote a client's stock…following are just a few of the CRWE websites Crown Equity Holdings and Mike Zamon use to promote stock sales for their clients: crownequityholdings.com; CRWEnewswire.com; DrStockPick.com CRWEfinance.com; CRWESelect.com CRWEpicks.com; BestOTC.com; Stock-PR.com PennyOmega.com; PennyToBuck.com; StockHotTips.com; CRWEwallstreet.com Doubleinstocks.com; Crowntradingsystems.com;

138. Some of the clients that have hired Mike Zamon and Crown Equity Holdings to promote their stock sales, and to attempt to get their stock trading at a higher price are: Global Hunter Corporation, Majestic Gold Corp., American Pacific Rim

Commerce Group, (APRM.PK), Corporate
Universe Inc., (COUV.PK), Eline Entertainment
Group, Inc. (EEGI.PK), GreenHouse Holdings,
(GRHU.PK), HIRU Corporation (HIRU.PK),
MusclePharm Corporation (OTCBB: MSLP),
Orofino Gold Corporation (ORFG.PK) PTS, Inc.
(OTC: PTSH:BB), SavWatt USA, Inc.,
(SAVW.PK), Solar Park Initiatives, Inc
(SOPV.OB), True 2 Beauty Inc., (TRTB. PK), A5
Laboratories Inc. (AFLB.OB), CANNABIS
SCIENCE INC (CBIS.OB), Mass Petroleum Corp.
(OTCBB: MASP), EQ Smart Energy Drink from
EQ Labs Inc. (EQLB.PK). First Liberty Power
Corp. (FLPC), Healthmed Services Ltd.
(HEME.OB), NUTRIPURE BEVERAGES
INC.,(OTC: NBVG.PK), NW Tech Capital, Inc.
(NWTT-PK), Sport Endurance, Inc. (OTCBB:
SENZ), Gold American Mining Corp., (SILA.OB),
South Shore resources, Inc., (SSHO.PK),
ZAMAGE DIGITAL ART (OTC: ZMGD.PK),
Biopack Environmental Solutions, Inc.
(BPAC.OB),

139.  The idea of multiple sites was to make people believe a lot of places were talking about the companies being promoted, and with so much positive comments all over the web, the plan was to manipulate the market upward and to create a trading volume.

140. Zaman even created an alleged News site called CRWENewswire, this site was created to be an aggregator of information placed on the other sires. However Google caught wind of what Mike Zaman was doing and not only removed the site from Google news, but also from the search engine.

141. Mike Zaman then bought Google approved news site "Star City News", and did the same thing with this site causing Google to delete it as a news source.

142.  Each of these Companies along with Mike Zaman's websites has been provided to the SEC.

## EIGHTH CAUSE OF ACTION

**Breach of Contract, failure of consideration
Defendants: Mike Zaman, Montse Zaman and
CROWN EQUITY HOLDINGS**

143. Plaintiff repeats, re-alleges and incorporates all prior paragraphs as though the same are fully set forth hereat

144.    Plaintiff and defendants entered into a series of oral agreements evidenced by shares of CRWE securities.

145.    The first transaction was in or around February 2009 where plaintiff was induced to acquire 250,000 shares of CRWE securities it was represented to plaintiff that these securities would be worth $0.25 cents per share.

146.    The second agreement was in or around March of 2009 when Plaintiff invested additional money to acquire CRWE shares which were also represented to have a future worth of $0.25 each.

147.    The third agreement was in or about January of 2010 when Plaintiff exchanged his furnishings for 40,000 shares of CRWE stock this time the shares were represented to have a future value of $3.00 to $5.00 as the Company was going to be listed on NASDAQ.

148.    From and after April 2010 to November 23, 2010 plaintiff received shares in CRWE stock as a part of his pay, those shares were also represented to have a value of at least $0.25 by December 2010

149.    The shares have no trading market, Mike Zaman or an associate appear to be the only purchaser of the stock, and are reducing the value of the shares every day, the bid range currently is from $0.005 to $0.01, and it is believed that the shares may stop trading altogether.

150.    The final agreement, Plaintiff worked for CRWE and the Zaman's from in or around April 2010 to November 23, 2010, he agreed to be paid and was paid $2000 a month by check, and $3000 a month in stock, Plaintiff believed at the time that the stock would have a future value in accordance with Mike Zaman's representations of from $300 to $500 dollars per share.

151.    There is now a complete failure of the consideration supporting the bargain

152.    The failure of the consideration constitutes a breach of the agreement. Plaintiff is entitled to a replacement of this consideration in something of value or the payment in money of equal value.

Eighth Cause of Action
**Fraud by Concealment**
**Claudia McDowell, Lisa ODOM,**
**McDowell Odom Law Firm, Mike Zaman, Montse**
**Zaman, and Crown Equity Holdings**

153.    Plaintiff repeats, re-alleges and incorporates all prior paragraphs as though the same are fully set forth hereat

154.    As counsel for CRWE Claudia McDowell, Lisa ODOM, McDowell Odom Law Firm were charged with a duty to protect the company and its investors from harm, in that capacity they had a duty to disclose the following, (i) mike Zaman was running the company, (ii) mike zaman was found

guilty of stock manipulation, and might do it with CRWE shares, (iii) Mike Zaman was barred from any SEC actions, and (iv) mike Zaman was actively manipulating CRWE shares on a current basis

155. This information was of a material consideration and was not only required to be reported on the 10K and 10Q but was required to be disclosed to any and all investors for CRWE shares. The defendants have concealed or suppressed a material fact;

156. The defendant were under a duty to disclose the fact to the plaintiff, and to CEO of CRWE;

157. The defendant have intentionally concealed or suppressed the fact with the intent to defraud or to aid Mike Zaman in his scheme to defraud plaintiff;

158. Plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed facts;

159. The concealment or suppression of the facts caused plaintiff to sustain damage

160. Plaintiff has attached hereto and incorporates as Exhibit "A" a true and correct copy of the Major Direct shareholders in Crown Equity Holdings

161.   Plaintiff has attached hereto and incorporates as Exhibit "B" a true and
correct copy of the Crown Equity Holdings corporate information from the
Nevada Secretary of State.

162.   Plaintiff has attached hereto and incorporates as Exhibit "C" a true and
correct copy of the Crown Marketing corporate information from the
Nevada Secretary of State.

163.   Plaintiff has attached hereto and incorporates as Exhibit "D" a true and
correct copy of the Security and Exchange Commission Order Re; Mike
Zaman

Plaintiff Preys Judgment as follows:

1. For: actual Damages, subject to proof at the time of Trial but well in excess
of 250,000;
2. For: Exemplary Damages, Subject to proof at the time of Trial;
3. For Benefit of the bargain damages of $0.25 cents for each share held at
the time of trial and for damages of $3.00 a share for 40,000 of those shares.
4. For Special damages subject to proof at the time of trial.
5. For: Damages for Defamation Per Se, as the Jury will award.
6. For such other and further relief as the court may determine to be just and
proper

Dated: December 5, 2010,

_____

Jack Ferm In Pro Se
1812 W. Sunset Blvd, 1-134
St. George, Utah 84770
PHN (435) 674-9222

## Proof of Service by Mailing

Declaration of Service by US Mail, First Class, with Postage thereon fully prepaid.

I, the undersigned, hereby declare:
I am over eighteen years of age and not a party to the within cause. My address is 1812 W. Sunset Blvd. St. George, Utah 84770 On November 8, 2010, I served a copy of the within First Amended Complaint on each of the following, by first class mail, by placing the same in an envelope addressed respectively as follows:

Crown Equity Holdings Inc.,
5440 W. Sahara Ave. Suite 205
Las Vegas, Nevada 89146

Each said envelope was then on said date sealed and deposited in the United States mail at St. George, Utah , Washington County, the county in which I am reside, with the postage thereon fully prepaid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _3_ day of _Dec_ 2010 at Washington County, Utah.

Linda Reiger
1812 W Sunset Blvd.
St. George, UTAH 84770

**Major Direct Holders (Forms 3 & 4)**

| Holder | Shares | Reported |
|---|---|---|
| CROWN MARKETING CORP. | 396,714,690 | Aug 16, 2010 |
| ZAMAN MONTSE | 73,310,976 | Aug 16, 2010 |
| SAUCEDO-BARDAN ARNULFO | 7,872,003 | Aug 16, 2010 |
| BOSKET KENNETH CORNELL SR | 6,100,020 | Aug 16, 2010 |
| ONOUE STEVEN | 3,150,000 | Aug 16, 2010 |

# CROWN EQUITY HOLDINGS INC.

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 8/31/1995 |
| Type: | Domestic Corporation | Entity Number: | C15012-1995 |
| Qualifying State: | NV | List of Officers Due: | 8/31/2011 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV19951124840 | Business License Exp: | 8/31/2011 |

## Additional Information

| | |
|---|---|
| Central Index Key: | 0001103833 |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | MONTSE ZAMAN | Address 1: | 9663 ST CLAUDE AVE |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89148 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 5,000,000.00 |
| Par Share Count: | 4,900,000,000.00 | Par Share Value: | $ 0.001 |
| Par Share Count: | 100,000,000.00 | Par Share Value: | $ 0.001 |

## Officers                                ☐ Include Inactive Officers

**Director - MONTSE ZAMAN**

| | | | |
|---|---|---|---|
| Address 1: | 9663 SAINT CLAUDE AVENUE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89148 | Country: | USA |
| Status: | Active | Email: | |

**Treasurer - MONTSE ZAMAN**

| | | | |
|---|---|---|---|
| Address 1: | 9663 SAINT CLAUDE AVENUE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89148 | Country: | USA |
| Status: | Active | Email: | |

**Secretary - MONTSE ZAMAN**

| | | | |
|---|---|---|---|
| Address 1: | 9663 SAINT CLAUDE AVENUE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89148 | Country: | USA |
| Status: | Active | Email: | |

**Director - STEVEN ONOUE**

| | | | |
|---|---|---|---|
| Address 1: | 9663 SAINT CLAUDE AVENUE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89148 | Country: | USA |

| | | | |
|---|---|---|---|
| Status: | Active | Email: | |

**Director - KENNETH BOSKET**

| | | | |
|---|---|---|---|
| Address 1: | 9663 ST CLAUDE AVE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89148 | Country: | USA |
| Status: | Active | Email: | |

**President - KENNETH BOSKET**

| | | | |
|---|---|---|---|
| Address 1: | 9663 SAINT CLAUDE AVENUE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89148 | Country: | USA |
| Status: | Active | Email: | |

**Director - LOWELL HOLDEN**

| | | | |
|---|---|---|---|
| Address 1: | 5440 W SAHARA STE 205 | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89146 | Country: | |
| Status: | Active | Email: | |

**Director - ARNULFO SAUCEDO**

| | | | |
|---|---|---|---|
| Address 1: | 9663 SAINT CLAUDE AVENUE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89148 | Country: | USA |
| Status: | Active | Email: | |

## Actions\Amendments

| | | | |
|---|---|---|---|
| Action Type: | Articles of Incorporation | | |
| Document Number: | C15012-1995-001 | # of Pages: | 5 |
| File Date: | 8/31/1995 | Effective Date: | |

(No notes for this action)

| | | | |
|---|---|---|---|
| Action Type: | Initial List | | |
| Document Number: | 20090677952-47 | # of Pages: | 2 |
| File Date: | 9/27/1995 | Effective Date: | |

(No notes for this action)

| | | | |
|---|---|---|---|
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-003 | # of Pages: | 2 |
| File Date: | 1/12/1996 | Effective Date: | |

(2) PGS. PMI
VISIONEERING CORPORATION PMIB9 % 001

| | | | |
|---|---|---|---|
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-004 | # of Pages: | 2 |
| File Date: | 5/01/1996 | Effective Date: | |

(2)PGS. DMF
ASIAMERICAN ENERGY GROUP INC. DMFB _ 002

| | | | |
|---|---|---|---|
| Action Type: | Annual List | | |
| Document Number: | 20090677949-93 | # of Pages: | 1 |
| File Date: | 9/05/1996 | Effective Date: | |

(No notes for this action)

| | | | |
|---|---|---|---|
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-005 | # of Pages: | 2 |
| File Date: | 5/16/1997 | Effective Date: | |

(2)PGS. MMR
CARE FINANCIAL GROUP, INC. MMRB NR 00003

| | | | |
|---|---|---|---|
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-006 | # of Pages: | 2 |

| | | | |
|---|---|---|---|
| File Date: | 4/02/1999 | Effective Date: | |
| REINSTATED-REVOKED 5-1-98 EJF | | | |
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-007 | # of Pages: | 2 |
| File Date: | 4/23/1999 | Effective Date: | |
| (2)PGS. MMR | | | |
| TRUMP OIL CORPORATION MMRB5 00004 | | | |
| Action Type: | Registered Agent Change | | |
| Document Number: | C15012-1995-008 | # of Pages: | 1 |
| File Date: | 5/05/1999 | Effective Date: | |
| NEVADA AGENCY & TRUST COMPANY SUITE 880 | | | |
| 50 WEST LIBERTY STREET RENO NV 89501 KFA | | | |
| Action Type: | Annual List | | |
| Document Number: | C15012-1995-021 | # of Pages: | 2 |
| File Date: | 9/07/1999 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Merger | | |
| Document Number: | C15012-1995-009 | # of Pages: | 5 |
| File Date: | 10/13/1999 | Effective Date: | |
| ARTICLES OF MERGER FILED MERGING 20/20 WEB DESIGN, INC., A (CO) CORPORATION | | | |
| NOT QUALIFIED IN NEVADA, INTO THIS CORPORATION. (5)PGS. DMF | | | |
| Action Type: | Annual List | | |
| Document Number: | C15012-1995-022 | # of Pages: | 2 |
| File Date: | 3/21/2001 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-010 | # of Pages: | 1 |
| File Date: | 3/29/2001 | Effective Date: | |
| CAPITAL STOCK WAS 25,000,000 @ .001 = $25,000. MXB | | | |
| (1)PG MXB | | | |
| Action Type: | Merger | | |
| Document Number: | C15012-1995-011 | # of Pages: | 6 |
| File Date: | 4/10/2001 | Effective Date: | |
| ARTICLES OF MERGER FILED MERGING BENTLEYTEL.COM, INC., (NV), C24196-1999, INTO | | | |
| THIS CORPORATION CHANGING THE NAME WITHIN THE MERGER. (6)PGS CHM | | | |
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-012 | # of Pages: | |
| File Date: | 4/10/2001 | Effective Date: | |
| 20/20 WEB DESIGN, INC. CHMB 4 00005 | | | |
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-013 | # of Pages: | 1 |
| File Date: | 6/08/2001 | Effective Date: | |
| CERTIFICATE OF CORRECTION FILED CORRECTING EFFECTIVE DATE ON MERGER FILED | | | |
| 4/10/01. (CORRECT EFF. DATE IS 7/10/01).(1)PG. JEP | | | |
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-014 | # of Pages: | 4 |
| File Date: | 6/18/2001 | Effective Date: | |
| ARTICLES OF TERMINATION OF MERGER FILED TERMINATING THE MERGER FILED 4-10-01 | | | |
| WITH EFFECTIVE DATE 7-10-01 (4) PGS. | | | |
| CANCELLATION OF NAME CHANGE EFFECTED BY TERMINATION OF MERGER FILED 4-10-01. | | | |
| BENTLYTEL.COM, INC. PXEB - 00006 | | | |
| Action Type: | Annual List | | |
| Document Number: | C15012-1995-019 | # of Pages: | 1 |

| File Date: | 6/05/2002 | Effective Date: | |
|---|---|---|---|
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | C15012-1995-018 | # of Pages: | 1 |
| File Date: | 1/09/2003 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-015 | # of Pages: | 1 |
| File Date: | 2/10/2003 | Effective Date: | |
| CERTIFICATE OF AMENDMENT FILED AMENDING CORPORATE NAME. (1)PG. JEP | | | |
| 20/20 WEB DESIGN, INC. JEPB 4 00007 | | | |
| Action Type: | Registered Agent Change | | |
| Document Number: | C15012-1995-016 | # of Pages: | 1 |
| File Date: | 5/13/2003 | Effective Date: | |
| MIKE ZAMAN | | | |
| 2466 RAM CROSSING WAY HENDERSON NV 89014 NEH | | | |
| Action Type: | Annual List | | |
| Document Number: | C15012-1995-002 | # of Pages: | 2 |
| File Date: | 10/23/2003 | Effective Date: | |
| List of Officers for 2003 to 2004 | | | |
| Action Type: | Amendment | | |
| Document Number: | C15012-1995-017 | # of Pages: | 1 |
| File Date: | 12/10/2003 | Effective Date: | |
| CAPITAL STOCK WAS 100,000,000 @ .001 = $100,000 CXE | | | |
| CERTIFICATE OF AMENDMENT FILED AMENDING ARTICLES ONE (CORPORATE NAME) & FOUR | | | |
| (STOCK). (1)PG. CXE | | | |
| 20/20 NETWORKS, INC. CXEBL 00008 | | | |
| Action Type: | Reinstatement | | |
| Document Number: | 20060098845-02 | # of Pages: | 2 |
| File Date: | 2/16/2006 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Acceptance of Registered Agent | | |
| Document Number: | 20060098849-46 | # of Pages: | 1 |
| File Date: | 2/16/2006 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Registered Agent Address Change | | |
| Document Number: | 20060578923-32 | # of Pages: | 38 |
| File Date: | 9/07/2006 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20060590255-04 | # of Pages: | 2 |
| File Date: | 9/14/2006 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Amendment | | |
| Document Number: | 20060621756-35 | # of Pages: | 1 |
| File Date: | 9/28/2006 | Effective Date: | 10/03/2006 |
| (No notes for this action) | | | |
| Action Type: | Registered Agent Name Change | | |
| Document Number: | 20070330429-20 | # of Pages: | 16 |
| File Date: | 5/11/2007 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Registered Agent Address Change | | |
| Document Number: | 20070365128-14 | # of Pages: | 16 |

| File Date: | 5/25/2007 | Effective Date: | |
|---|---|---|---|
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20070696372-82 | # of Pages: | 1 |
| File Date: | 10/11/2007 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Amendment | | |
| Document Number: | 20080016642-79 | # of Pages: | 1 |
| File Date: | 1/09/2008 | Effective Date: | |

Previous Stock Value: Par Value Shares: 500,000,000 Value: $ 0.001 No Par Value Shares: 0 ------------------------------------------------------- Total Authorized Capital: $ 500,000.00 New Stock Value: Par Value Shares: 5,000,000,000 Value: $ 0.001 No Par Value Shares: 0 ----------------------------------------------------- Total Authorized Capital: $ 5,000,000.00

| Action Type: | Registered Agent Address Change | | |
|---|---|---|---|
| Document Number: | 20080296150-43 | # of Pages: | 222 |
| File Date: | 4/29/2008 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20080619971-33 | # of Pages: | 2 |
| File Date: | 9/18/2008 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Amendment | | |
| Document Number: | 20090655841-40 | # of Pages: | 1 |
| File Date: | 8/31/2009 | Effective Date: | |

Previous Stock Value: Par Value Shares: 5,000,000,000 Value: $ 0.001 No Par Value Shares: 0 ------------------------------------------------------- Total Authorized Capital: $ 5,000,000.00 New Stock Value: Par Value Shares: 500,000,000 Value: $ 0.001 No Par Value Shares: 0 ----------------------------------------------------- Total Authorized Capital: $ 500,000.00

| Action Type: | Annual List | | |
|---|---|---|---|
| Document Number: | 20090661190-94 | # of Pages: | 2 |
| File Date: | 9/02/2009 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Registered Agent Change | | |
| Document Number: | 20090662025-12 | # of Pages: | 1 |
| File Date: | 9/02/2009 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Amended & Restated Articles | | |
| Document Number: | 20100187747-97 | # of Pages: | 5 |
| File Date: | 3/25/2010 | Effective Date: | |

Previous Stock Value: Par Value Shares: 500,000,000 Value: $ 0.001 No Par Value Shares: 0 ------------------------------------------------------- Total Authorized Capital: $ 500,000.00 New Stock Value: Par Value Shares: 10,000,000 Value: $ 0.001 Par Value Shares: 490,000,000 Value: $ 0.001 No Par Value Shares: 0 ----------------------------------------------------- Total Authorized Capital: $ 500,000.00

| Action Type: | Designation | | |
|---|---|---|---|
| Document Number: | 20100366570-60 | # of Pages: | 4 |
| File Date: | 5/25/2010 | Effective Date: | |
| SERIES A PREFERRED | | | |
| Action Type: | Annual List | | |
| Document Number: | 20100525906-00 | # of Pages: | 2 |
| File Date: | 7/16/2010 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Stock Split | | |
| Document Number: | 20100532382-16 | # of Pages: | 1 |
| File Date: | 7/19/2010 | Effective Date: | |

Previous Stock Value: Par Value Shares: 10,000,000 Value: $ 0.001 Par Value Shares: 490,000,000 Value: $ 0.001

No Par Value Shares: 0 ---------------------------------------------------------------------- Total Authorized Capital: $ 500,000.00 New Stock Value: Par Value Shares: 4,900,000,000 Value: $ 0.001 Par Value Shares: 100,000,000 Value: $ 0.001 No Par Value Shares: 0 ----------------------------------------------------------------- Total Authorized Capital: $ 5,000,000.00

# CROWN MARKETING CORPORATION

## Business Entity Information

| | | | |
|---|---|---|---|
| **Status:** | Active | **File Date:** | 7/21/2009 |
| **Type:** | Domestic Corporation | **Entity Number:** | E0386902009-6 |
| **Qualifying State:** | NV | **List of Officers Due:** | 7/31/2011 |
| **Managed By:** | | **Expiration Date:** | |
| **NV Business ID:** | NV20091048729 | **Business License Exp:** | 7/31/2011 |

## Registered Agent Information

| | | | |
|---|---|---|---|
| **Name:** | MONTSE ZAMAN | **Address 1:** | 9663 ST. CLAUDE AVE |
| **Address 2:** | | **City:** | LAS VEGAS |
| **State:** | NV | **Zip Code:** | 89148 |
| **Phone:** | | **Fax:** | |
| **Mailing Address 1:** | | **Mailing Address 2:** | |
| **Mailing City:** | | **Mailing State:** | NV |
| **Mailing Zip Code:** | | | |
| **Agent Type:** | Noncommercial Registered Agent | | |

View all business entities under this registered agent

## Financial Information

| | | | |
|---|---|---|---|
| **No Par Share Count:** | 0 | **Capital Amount:** | $ 75,000.00 |
| **Par Share Count:** | 75,000,000.00 | **Par Share Value:** | $ 0.001 |

## Officers

☐ Include Inactive Officers

**President - AIDA BARDAN GLORIA**

| | | | |
|---|---|---|---|
| **Address 1:** | MINA #222 SUR | **Address 2:** | |
| **City:** | GOMEZ PALACIO DURANGO | **State:** | |

| Zip Code: | CP 35000 | Country: | MEX |
|---|---|---|---|
| Status: | Active | Email: | |

**Director - AIDA BARDAN GLORIA**

| Address 1: | MINA #222 SUR | Address 2: | |
|---|---|---|---|
| City: | GOMEZ PALACIO DURANGO | State: | |
| Zip Code: | CP 35000 | Country: | MEX |
| Status: | Active | Email: | |

**Treasurer - DIONICIO SAUCEDO MENCHACA**

| Address 1: | MINA #222 SUR | Address 2: | |
|---|---|---|---|
| City: | GOMEZ PALACIO DURANGO | State: | |
| Zip Code: | CP 35000 | Country: | MEX |
| Status: | Active | Email: | |

**Secretary - JUAN SAUCEDO BARDAN**

| Address 1: | MINA #222 SUR | Address 2: | |
|---|---|---|---|
| City: | GOMEZ PALACIO DURANGO | State: | |
| Zip Code: | CP 35000 | Country: | MEX |
| Status: | Active | Email: | |

**Actions\Amendments**

Click here to view 3 actions\amendments associated with this company

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C.


SECURITIES AND EXCHANGE COMMISSION v. ANDREW S. PITT,
CONECTISYS CORP., DEVON INVESTMENT ADVISORS, INC., B&M
CAPITAL CORP., MIKE ZAMAN, and SMITH, BENTON & HUGHES, INC.,

United States District Court for the Central District of California, Civil Action No.
96-4164 (MRP) (ANx) Litigation Rel. No. 15909 / September 29, 1998

DISTRICT COURT ENTERS FINAL JUDGMENTS IN CASE
INVOLVING CONECTISYS STOCK MANIPULATION

The Securities and Exchange Commission ("Commission") today
announced that on September 22, 1998, the United States District
Court for the Central District of California entered a final
judgment of permanent injunction against Conectisys Corporation
("Conectisys"), which is the final relief obtained by the
Commission in this case. The Commission brought this action in
June 1996 to enjoin the ongoing manipulation of the market for
Conectisys stock. In its final judgment against Conectisys, the
Court permanently enjoined the company from future violations of
Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933
("Securities Act"), the registration and antifraud provisions.
The Court also ordered Conectisys to disgorge $175,000 of
proceeds derived from its fraudulent conduct.

The entry of final judgment against Conectisys follows
earlier judgments the Court entered on June 29, 1998 against
defendants Andrew S. Pitt ("Pitt"), Devon Investment Advisors,
Inc. ("Devon"), Mike Zaman ("Zaman"), B&M Capital Corp. ("B&M"),
and Smith Benton & Hughes, Inc. ("Smith Benton"). On June 29,
the Court permanently enjoined Zaman, Smith Benton, and B&M from
future violations of Section 17(a) of the Securities Act, Section
10(b) of the Securities Exchange Act of 1934 ("Exchange Act"),
and further enjoined Zaman and Smith Benton from violating
Section 15(c)(1)(A) of the Exchange Act. The Court also ordered
Zaman, Smith Benton, and B&M, jointly and severally, to disgorge
$611,193 in unlawful proceeds derived from the manipulation of
the market for Conectisys stock. The Court enjoined Pitt from
future violations of Sections 5(a), 5(c), and 17(a) of the
Securities Act, and enjoined Devon from violating Sections 5(a)
and 5(c). The final judgment against Pitt and Devon also ordered
them, jointly and severally, to disgorge $399,980, and ordered an
additional $50,000 of disgorgement against Pitt, jointly and

severally with Conectisys.

The final judgments against Conectisys, Pitt, Devon, Zaman, Smith Benton, and B&M were entered following a bench trial held in July 1997. Based on the evidence presented at the trial, the Court found that Pitt and Zaman together planned the manipulation of Conectisys stock, and Zaman and Smith Benton carried out that manipulation with Pitt's assistance. In the course of carrying out the manipulation, Zaman and Smith Benton controlled the number of Conectisys common shares available for sale on the market, dictated the prices at which those shares traded, engaged in "daisy chain" trading with market participants to fill retail customer orders, and artificially increased the price of the stock purchased by retail customers. The Court also found that Pitt and Conectisys offered and sold restricted stock to private investors based on material misrepresentations and that Pitt and Conectisys drafted a false and misleading business plan that was supplied to potential investors. Finally, the Court found that Pitt, Conectisys, and Devon sold unregistered securities in violation of Section 5 of the Securities Act.

The Commission also today instituted and settled an administrative proceeding against Mike Zaman. On consent, the Commission permanently barred Zaman from association with any broker, dealer, investment adviser, investment company or municipal securities dealer.

This enforcement action was part of the Commission's four-pronged approach to minimizing Microcap fraud: enforcement, inspections, investor education and regulation. For more information about the SEC's response to Microcap fraud, visit the SEC's Microcap Fraud Information Center at:

http://www.sec.gov/news/extra/microcap.htm.