**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JACK FERM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:10-cv-02075-GMN-LRL |
| vs. | ) | |
| | ) | **ORDER** |
| CROWN EQUITY HOLDINGS, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff is a self-represented litigant who brought this action against his former employer and related individuals, asserting claims ranging from wrongful termination and defamation *per se* to unlawful manipulation of securities.

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF No. 10)[1]; Motion to Amend Complaint (ECF No. 16); Motion to Appoint Receiver (ECF No. 17); Motion to Disqualify Defendants' Counsel (ECF No. 18); Motion for a Hearing (ECF No. 32); and Motion for Partial Summary Judgment (ECF No. 43).  Also pending are Defendants' Motion to Dismiss (ECF No. 7) and Rule 56(d) Motion (ECF No. 22).

## I.     PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF NO. 16)

Plaintiff requests leave to amend his First Amended Complaint (ECF No. 4) in order to plead additional facts and add Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and "Invasion of Privacy False Light" claims.  Defendants failed to respond to the Motion.

In light of Federal Rule of Civil Procedure 15(a)(2)'s instruction that a "court should

---

[1] Although the docket entry at ECF No. 8 indicates that Plaintiff's Motion for Partial Summary Judgment is located there, the Motion was actually filed at ECF No. 10.

1    freely give leave [to amend] when justice so requires" and the Supreme Court's statement that

2    "this mandate should be heeded" in the absence of any "apparent or declared"' reason

3    counseling against amendment, *Foman v. Davis*, 371 U.S. 178, 182 (1962), Plaintiff will be

4    given leave to file the Second Amended Complaint attached to his Motion (ECF No. 16).  This

5    amendment will ensure judicial efficiency, as it will allow Plaintiff to assert in one proceeding

6    all of his claims arising out of Defendants' alleged wrongdoing.  Defendants have not

7    "declared" a reason that counsels against such amendment.

8    ## II.    DEFENDANTS' MOTION TO DISMISS (ECF NO. 7)

9          Defendant moves to dismiss Plaintiff's First Amended Complaint pursuant to Federal

10   Rules of 12(b)(1) and 12(b)(6), contending that diversity of citizenship is lacking and Plaintiff

11   fails to state a claim upon which relief can be granted.

12         ### A.    Subject Matter Jurisdiction

13         Defendants claim that the Court lacks subject matter jurisdiction over this lawsuit

14   because Plaintiff failed to join an indispensable party--River Ridge Holdings ("RRH")--and that

15   joinder of RRH as a plaintiff would destroy diversity jurisdiction because RRH is allegedly a

16   citizen of Nevada.[2]  However, Defendants fail to recognize that the Court's jurisdiction over this

17   case is not just premised on diversity jurisdiction; the Court also has federal question jurisdiction.

18         Plaintiff's Third Cause of Action alleges claims arising under the Securities Exchange

19   Act of 1934 and the Securities Act of 1933, both of which are federal statutes.  Because "[a]ny

20   non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even

21   if that claim is later dismissed on the merits under Rule 12(b)(6)," *Bollard v. California*

22   *Province of the Society of Jesus*, 196 F.3d 940, 951 (9th Cir. 1999), the Court has federal

23

24   [2] Defendants have not shown that RRH is actually a citizen of Nevada.  According to the document from the Nevada
     Secretary of State attached to Defendants' Motion to Dismiss, RRH is a limited partnership. (*See* Ex. 1, ECF No. 7.)  For the
25   purposes of diversity of citizenship analysis, a partnership "is a citizen of each State or foreign country of which any of its
     partners is a citizen." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004).  Yet, Defendants have failed to
     list each of RRH's partners, much less their states of citizenship.

1   question jurisdiction over this lawsuit.  Therefore, even if joinder of RRH were necessary and

2   even if RRH were a citizen of Nevada, the Court would still have subject matter jurisdiction

3   over the lawsuit.  Thus, dismissal is not appropriate under Rule 12(b)(1) for lack of subject

4   matter jurisdiction, nor under Rule 12(b)(7) for failure to join a necessary party, *see*

5   *Cunningham v. Municipality of Metropolitan Seattle*, 751 F. Supp. 885, 896-97 (W.D. Wash.

6   1990) (denying request for dismissal due to failure to join an indispensible party where joinder

7   of the indispensible party would not destroy subject matter jurisdiction).

8         **B.       RRH as an Indispensible Party**

9         A motion to dismiss for failure to join an indispensable party can, however, be converted

10  to a motion to compel joinder of that party where the party's joinder would not affect the

11  Court's jurisdiction. *See, e.g., id.*  It is Defendants' burden to show that RRH is an indispensable

12  party, as "[a] party making a Rule 12(b)(7) motion to dismiss for failure to join a party under

13  Rule 19 bears the burden of demonstrating that dismissal or joinder is appropriate." *Asarco LLC*

14  *v. Shore Terminals LLC*, No C 11-01384 WHA, 2011 WL 2669474, at *2 (N.D. Cal. July 7,

15  2011).  Defendants have failed to carry that burden here.

16        Defendants first contend that Plaintiff cannot bring any claims related to his employment

17  with Defendant Crown Equity Holdings because RRH, rather than Plaintiff, entered into the

18  consulting agreement with Defendant Crown Equity Holdings that governed Plaintiff's

19  employment at Defendant Crown Equity Holdings.  In support of this argument, Defendants

20  attach a document that they allege is a "Consulting Agreement by and between River Ridge

21  Holdings, LTD, a Nevada entity ("River Ridge"), and Defendant Crown." (*See* Ex. 1, ECF No.

22  7.)  However, nowhere in that document is RRH or Plaintiff's name mentioned. (*See* Ex. A, ECF

23  No. 7.)  Instead, it appears to be an agreement between someone named Linda Reiger and

24  Defendant Crown Equity Holdings.  This is not sufficient to demonstrate that RRH is an

25  indispensable party with regard to Plaintiff's employment claims.

Defendants also argue that Plaintiff cannot bring his various actions concerning the manipulation of Crown Equity Holdings common stock because RRH, not Plaintiff, was a party to the subscription agreements that provided for the purchase of that stock.  However, Plaintiff rebuts this argument by attaching to his Response a document dated prior to the initiation of this lawsuit wherein RRH purports to assign "all rights, title and interest" in those stocks to Plaintiff. (Ex. 2, Resp., ECF No. 15.)  Defendants filed no Reply to Plaintiff's Response and, therefore, effectively conceded the point with regard to this Motion. *See Hardy v. Indymac Federal Bank*, 263 F.R.D. 586, 590 (E.D. Cal. 2009).  Thus, Defendants have failed to meet their burden of demonstrating that RRH is an indispensable party.

### C.       Failure to State a Claim

Because the Court has granted Plaintiff's Motion to Amend (ECF No. 16), Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim is now moot and, consequently, will be denied without prejudice.  Defendants may file a new Motion to Dismiss addressing the allegations and claims set forth in the Second Amended Complaint, if they so choose.

## III.     PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT (ECF NOS. 10 & 43)

Plaintiff filed his first Motion for Partial Summary Judgment (ECF No. 10) less than two months after he filed his Complaint and initiated this suit.  His second Motion for Partial Summary Judgment (ECF No. 43) was filed two months later.  At that time, no formal discovery had been conducted, no scheduling order setting the timetable for discovery had been entered, nor had Defendants' Answer been filed.

Consequently, Defendants moved pursuant to Federal Rule of Civil Procedure 56(d) for the Court to either deny or stay consideration of Plaintiffs' Motions for Partial Summary Judgment. (*See* Rule 56(d) Motion, ECF No. 22.)  Defendants cite to their need to conduct

discovery in order to properly respond to Plaintiff's motions, particularly their need to ascertain whether various incendiary or fraudulent statements alleged by Plaintiff to be attributable to various Defendants were: (a) in fact made, and (b) in fact attributable to those particular Defendants.  The Court agrees that discovery would be appropriate and helpful to both sides in formulating their respective Motions for Summary Judgment and Responses; therefore, Plaintiff's Motions for Partial Summary Judgment (ECF Nos. 10 & 43) will be denied without prejudice.  Should Plaintiff wish to file similar motions at the close of discovery, he may do so then.  As was noted in a case before the Western District of Texas:

> Though Rule 56 allows a party to move for summary judgment 'at any time,' the granting of summary judgment is limited until after adequate time for discovery. A grant of summary judgment is premature and improper when basic discovery has not been completed, particularly when the moving party has exclusive access to the evidence necessary to support the nonmoving party's claims.

*Phongsavane v. Potter*, No. CIVASA05CA0219-XR, 2005 WL 1514091, at *5 (W.D. Tex. June 24, 2005) (internal citation omitted).  Plaintiff's Motions were premature here.  Defendants' Rule 56(d) Motion (ECF No. 22) will therefore be granted to the extent it requests the denial of Plaintiff's Motions for Partial Summary Judgment.

**IV.      MOTION TO APPOINT RECEIVER (ECF NO. 17)**

Plaintiff has also filed a Motion to Appoint Receiver (ECF No. 17), in which he asks to have a "custodian or receiver appointed to take over the affairs of Crown Equity Holdings." (Mot. to Appt. Receiver 1, ECF No. 17.)   This Motion will be denied.

Federal law governs the appointment of a receiver in a federal action, regardless of whether the court is exercising diversity or federal question jurisdiction. *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009).  "Under federal law, appointing a receiver is an extraordinary equitable remedy, which should be applied with caution." *Id.* at 844 (internal quotation marks omitted).  A receiver should be appointed "only in cases of clear necessity to

protect plaintiff's interests in the property." 12 Charles Alan Wright, Arthur R. Miller, Mary

Kay Kane, & Richard L. Marcus, *Federal Practice and Procedure* § 2983 (2d ed. 2011).

There is no precise test for determining whether to appoint a receiver; rather, federal

courts consider a variety of factors, such as:

> (1) whether [the party] seeking the appointment has a valid claim;
> (2) whether there is fraudulent conduct or the probability of
> fraudulent conduct, by the defendant; (3) whether the property is in
> imminent danger of being lost, concealed, injured, diminished in
> value, or squandered; (4) whether legal remedies are inadequate; (5)
> whether the harm to plaintiff by denial of the appointment would
> outweigh injury to the party opposing appointment; (6) the plaintiff's
> probable success in the action and the possibility of irreparable
> injury to plaintiff's interest in the property; and, (7) whether [the]
> plaintiff's interests sought to be protected will in fact be well-served
> by receivership.

*Canada Life*, 563 F.3d at 844.

Plaintiff's Second Amended Complaint--like his previous two complaints--only seeks

legal remedies. (Ex. 1 p. 92, Mot. to Amend, ECF No. 16.)  That is, it only seeks money

damages.  "As such, Plaintiff's alleged injury is compensable in damages and appointment of a

receiver is not appropriate." *Concorde Equity II, LLC v. Miller*, No. 10-1041 SC, 2010 WL

2354189, at *2 (N.D. Cal. June 9, 2010).

Despite seeking only money damages in his complaints, Plaintiff contends that the Court

should order the "extraordinary" equitable remedy of appointing a receiver prior to an

adjudication of the case on the merits because he believes that Crown Equity Holdings will

become insolvent or otherwise collapse prior to him collecting any money judgment against it.

(Mot. to Appt. Receiver 6-10, ECF No. 17.)  Plaintiff puts forth a number of different arguments

in support of this contention.  His first argument appears to be that the company is going to

become insolvent because its board of directors lacks "business acumen" and is controlled by

Defendant Mike Zaman, the company's majority shareholder. (*See* Mot. to Appt. Receiver 4-6,

1  ECF No. 17.)  However, even if one were to take Plaintiff's assessment of Crown Equity

2  Holdings' management as true, a lack of business acumen among board members and a

3  tendency to agree with the majority shareholder fall far short of clearly indicating that Crown

4  Equity Holdings' insolvency is imminent.

5    In the Declaration attached to his Motion, Plaintiff also explains:

6     I have observed that since Mike Zaman began to trash my name on
   the CRWE Message Board that Crown has declined to generate new
7     business.  Therefore there is a strong possibility that Crown is either
   insolvent or is becoming insolvent.
8

9  (Decl. ¶ 30, Ex. 1, ECF No. 17.)  However, the opposite inference can also be drawn from the

10  facts cited by Plaintiff: Crown Equity Holdings could have "declined" to generate new business

11  because it already had more than enough and was thriving.  Plaintiff's next paragraph does,

12  however, cut against that inference, stating:

13     I have observed additionally that Mike Zaman has decreased his
   price to Promote companies from $25,000 to $5,000. This could
14     mean that Crown may be running out of money, since they have No
   new business.  This was placed on the Crown message board.
15

16   (Decl. ¶ 31, Ex. 1, ECF No. 17.)  But still, the fact that Crown Equity Holdings or Mr. Zaman is

17  lowering the price of its services does not necessarily mean that it is in imminent danger of

18  collapse.  Even Plaintiff concedes that this merely "could" mean that Crown Equity Holdings

19  "may" be running out of money.  That is far from the sort of clear showing necessary to justify

20  the extraordinary equitable relief Plaintiff requests.

21    Plaintiff also appears to want a receiver appointed because he believes that Defendant

22  Mike Zaman is manipulating the price of Crown Equity Holdings' Stock.  Plaintiff declares:

23     Zaman admitted to me on November 23, 2010 that he was holding
   the price of Crown Equity Shares up and had invested $60,000 of his
24     own money to do so, and (ii) a sampling of Crown Equity Holdings
   trading prices and volume supports his admission to me that the
25     price has been manipulated[.]

1    (Decl. ¶ 18, Ex. 1, ECF No. 17.)  However, to the extent that Mr. Zaman is somehow

2    manipulating the stock price and Plaintiff is harmed by it, Plaintiff may simply seek money

3    damages and need not resort to the drastic measure of having a receiver appointed. *See Leighton*

4    *v. One William St. Fund, Inc.*, 343 F.2d 565, 568 (2d Cir. 1965) (affirming trial court's denial of

5    a motion for appointment of receiver where Plaintiff's motion "was premised on claimed

6    conflicts of interest concerning Lehman Brothers' relationship with the Fund and, additionally,

7    on alleged waste of the Fund's assets by the defendant directors" because "any waste would be

8    compensable in damages").

9         In sum, Plaintiff has failed to show that there is a clear necessity justifying the

10   appointment of a receiver.  Indeed, Plaintiff's Motion fails to justify the requested relief under

11   all but one of the *Canada Life* factors.  It fails under the fourth and seventh *Canada Life* factors

12   (inadequacy of legal remedies & whether a receivership would be effective) because the

13   remedies Plaintiff seeks in his Second Amended Complaint are strictly legal remedies and he

14   has failed to show that his interest in receiving such remedies would in fact be well-served by a

15   receivership.  Further, he has failed to demonstrate that the third factor (whether the property is

16   in imminent danger of being lost) tips in his favor because he has not shown that there is truly an

17   imminent danger that Crown Equity Holdings will become insolvent and thereby deprive him of

18   his ability to collect on his damages claims.  The first and sixth factors (validity of claim &

19   likelihood of success) also do not weigh in plaintiff's favor, as this nascent case has not yet

20   developed to the point where it is clear that Plaintiff has a valid claim or that he is likely to

21   succeed on the merits.  Plaintiff does not even address the fifth factor (balance of the hardships),

22   but it does not seem that the balance tips in his favor where, as here, he has not yet prevailed on

23   the merits of his claims and a receivership would usurp the powers of the board members and

24   impose new administrative costs on the corporation.

25         The final factor--fraudulent conduct by the defendant--may tip in Plaintiff's favor, as he

1    has set forth specific instances of allegedly fraudulent activity on the part of Defendant Mike

2    Zaman, but this factor is hardly enough to outweigh the other six.  Accordingly, Plaintiff's

3    request for the extraordinary remedy of imposing a receivership on Crown Equity Holdings will

4    be denied.  Because Plaintiff's briefs are not sufficiently meritorious to warrant a hearing, his

5    Motion for a Hearing (ECF No. 32) on this Motion will also be denied.

6    **V.        PLAINTIFF'S MOTION FOR DISQUALIFICATION OF COUNSEL (ECF NO. 18)**

7           In this Motion, Plaintiff seeks to disqualify Defendants' counsel from representing

8    Defendant Crown Equity Holdings based on Plaintiff's speculation that Defendant Crown

9    Equity Holdings "has a claim against [Defendant] Mike Zaman based on Fraud, his market

10   manipulation of Crown securities which has all but destroyed the stock." (Mot. to Disqualify 16,

11   ECF No. 18.)  However, the Court is unwilling to take such a drastic step as disqualifying

12   counsel where such a conflict has not yet arisen and Plaintiff is merely speculating as to its

13   existence.  This motion will be denied.

14   **CONCLUSION**

15          **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend Complaint **(ECF No. 16)**

16   is **GRANTED**.

17          **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss **(ECF No. 7)** is

18   **DENIED without prejudice**.

19          **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment

20   **(ECF No. 10)** is **DENIED without prejudice.**

21          **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment

22   **(ECF No. 43)** is **DENIED without prejudice**.

23          **IT IS FURTHER ORDERED** that Defendants' Rule 56(d) Motion **(ECF No. 22)** is

24   **GRANTED** to the extent it requests the denial of Plaintiff's Motions for Partial Summary

25   Judgment.

1    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Receiver **(ECF No.**

2   **17)** is **DENIED**.

3    **IT IS FURTHER ORDERED** that Plaintiff's Motion for a Hearing **(ECF No. 32)** is

4   **DENIED**.

5    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Disqualification of Counsel

6   **(ECF No. 18)** is **DENIED**.

7    DATED this 1st day of August, 2011.

8

9

10   _____

    Gloria M. Navarro
11   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25